# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE: COMDISCO, INC., et al., )
                  Debtors. )

--------------------------------------------------- )

NICHOLAS K. PONTIKES, )
            )
           Appellant, )
            )
        vs. )     No. 06 C 1535
            )     (On appeal from
CERTAIN SIP CLAIMANTS, )     No, 01 B 24795)
            )
        Appellees. )

## MEMORANDUM OPINION AND ORDER

Appellant Nicholas Pontikes (Pontikes) seeks reversal of the bankruptcy court's order requiring production of a confidential settlement agreement that he previously entered into, together with John W. Costello, the Comdisco Litigation Trustee (Trustee).[1] By ordering production of the agreement, Pontikes claims that the bankruptcy court failed to follow authority favoring the protection of confidential settlement agreements, and that it erred in applying the discovery rules from the Bankruptcy Code to an agreement from an Illinois state court action. Appellees, who successfully sought production of the settlement agreement, contend that the application of the Code's discovery rules was correct and that the bankruptcy court properly exercised its equitable powers to safeguard the integrity of proceedings. For the following reasons, we reverse the bankruptcy court's order to produce the settlement agreement.

---

[1]With leave of court, the Trustee filed briefs supporting the appeal. He is not a party to this appeal and his memoranda are analogous to *amicus curiae* briefs.

## BACKGROUND

Appellees are former employees of Comdisco, Inc., who, together with other Comdisco employees, purchased Comdisco stock under a shared investment plan (SIP) in January and February 1998. Pursuant to the SIP, appellees used personal loans provided by JP Morgan Chase Bank (Bank) to purchase the stock. Comdisco guaranteed the loans and each SIP participant executed a promissory note in favor of the Bank. Comdisco entered Chapter 11 proceedings on July 16, 2001. Approximately one year later the bankruptcy court confirmed Comdisco's plan for reorganization, under which Comdisco was reorganized into Comdisco Holding; a Litigation Trust was established and the Trustee was appointed. The Bank accelerated the notes and in the bankruptcy action it sought to collect the amounts due under the guaranty. That guaranty claim was settled in December 2004, and the Bank's interest in and rights to the notes were assigned to the Trustee.

The Litigation Trust was created to liquidate claims against the SIP participants by collecting notes held by those participants, and to transfer the proceeds for distribution to the beneficiaries of the Trust. The Trust Agreement vests the Trustee with broad authority to "take such steps as it deems necessary to investigate, pursue, collect, litigate, settle and/or compromise" the SIP claims; to reduce those claims to cash proceeds and to distribute those proceeds provided that the Trustee maximizes the value of the SIP claims (*see* Trust Agreement, sec. 4.1(a), sec. 6.3(b)). Section 7.4 states that the determination of whether to file judicial proceedings to compromise an SIP claim is in the "sole discretion" of the Trustee.

The Trustee also has discretion to involve the bankruptcy court in the disposition of SIP claims. Authorization for the sale, disposition, transfer or settlement of an SIP claim is made by the Trust Advisory Board or Board of Directors of Comdisco Holding. It is only after those

entities fail to authorize a proposed disposition of an SIP claim that the Trustee "may file a motion requesting such authorization from the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction over such issue" (*id.* at 4.1(b)). Section 6.11 specifies that the Trustee "may, in his discretion," seek an order from the bankruptcy court if he "believes" such an order is necessary to protect the Trust beneficiaries, or for the approval of a course of action or proposed settlement.

As authorized by the Trust Agreement, the Trustee brought separate actions against 65 SIP participants in February 2004. These actions were filed in state and federal court, depending on the residency of each defendant. The action against Pontikes was brought in an Illinois state court (Costello v. Pontikes, 05 L 1385), and was settled on October 14, 2005. This settlement agreement contained an express confidentiality provision. Pontikes was the former President and Chief Executive Officer of Comdisco and remained on the Board of Directors until the reorganization plan was confirmed. Prior to settling with the Trustee, Pontikes had the largest SIP liability, totaling over $15 million, which, according to appellees, amounted to over 10 per cent of the total trust assets. In November 2005, the Trustee disclosed that it had settled with Pontikes, but, pursuant to the confidentiality provision, it did not produce the details of the settlement.

On January 17, 2006, appellees filed a motion for a FED. R. BANKR. P. 2004 (Rule 2004) examination of the Trustee in order to discover the terms of the Pontikes settlement agreement. This motion was argued before the bankruptcy court on March 2, 2006. The main thrust of appellees' argument for production was that the terms of the Pontikes settlement agreement with the Trustee "are relevant to the Certain SIP Claimants' claims that Comdisco violated, and continues to violate, its fiduciary duty and the implied covenant of good faith and fair

dealing with respect to the SIP agreement by refusing to treat all SIP participants in the same manner" (appellee brf. at 7; SIP Rule 2004 mot. at ¶ 8). In granting appellees' motion for the Rule 2004 examination, the bankruptcy court made the following findings and conclusions, which were stated in an order dated March 9, 2006:

> 1) The amount and terms of the Pontikes settlement are relevant to the SIP Claimants' claims as the concept of relevance relates and applies at the discovery stage.

> 2) Any privacy rights that Mr. Pontikes might have are outweighed by the public policy in favor of full disclosure of matters in bankruptcy court.

> 3) The appropriate administration of the assets of the former debtor does require that this settlement agreement be produced, not necessarily filed.

> 4) As the debtor's former CEO and allegedly an architect of the Plan, the settlement that Mr. Pontikes reached with the Trustee must be produced to guard the overall integrity of the bankruptcy process.

> 5) Federal Rule of Evidence 408 does not apply here.

> 6) The opinion in *White v. Kenneth Warren & Son, Ltd.,* 203 FRD 364 (N.D. Ill. 2001) is persuasive authority in connection with the resolution of this Motion.

> 7) The Fed. R. Bankr. P. 2004 device is appropriate under all the circumstances that are present.

Pontikes filed a notice of appeal on March 14, 2006, and the Trustee was subsequently granted leave to file briefs in support of the appeal.

## DISCUSSION

We review the bankruptcy court's discretionary order for abuse of discretion. <u>Wells Fargo Fin. Leasing, Inc. v. Comdisco, Inc.,</u> 2006 U.S. Dist. LEXIS 38553, *2 (N.D. Ill. 2006). The bankruptcy court abuses its discretion "when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." <u>In re Kmart Corp.,</u> 381 F.3d 709, 713 (7th Cir.

2004); Corporate Assets, Inc. v. Paloian, 368 F.3d 761, 767 (7th Cir. 2004). We do not second-guess the decision of a court that adheres to established legal principals as applied to the case, when that decision is "within the range of options from which one would expect a reasonable trial judge to select." Liu v. Price Waterhouse LLP, 302 F.3d 749, 754 (7th Cir. 2002) (quotation omitted).

Prior to reaching the substance of the bankruptcy court's order, we must address our jurisdiction to entertain this appeal. District courts will normally hear appeals from final judgments, orders and decrees of bankruptcy judges. 28 U.S.C. § 158(a)(1). Interlocutory orders may be heard with leave of the court, or certain orders entered under 11 U.S.C. § 1121(d). Id. at § 158(a)(2), (3). Pontikes argues that the order was final as to him because he was not a party to the bankruptcy court's proceedings. Appellees contend that matters before the bankruptcy court are not complete because a contemplated protective order has not yet been entered.

The bankruptcy court's March 9, 2006, order is not final because it does not end the litigation, leaving only the "distribution of estate assets to be completed." In re Wade, 991 F.2d 402, 406 (7th Cir. 1993). In granting the Rule 2004 motion, the bankruptcy court authorized a pre-litigation discovery tool and did not enter a final judgment. In re Blinder, Robinson & Co., Inc. v. Keller, 127 B.R. 267, 272 (Bankr. D. Colo. 1991). The finality rule has, however, been relaxed in bankruptcy proceedings because of the frequent satellite claims that creditors assert against the estate. See Lynd v. Outboard Marine Corp., 2004 U.S. Dist. LEXIS 15647, *3-4 (N.D. Ill. 2004) (citing In re Rimsat, Ltd., 212 F.3d 1039, 1044 (7th Cir. 2000); In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1299 (7th Cir. 1997); In re Wade, 991 F.2d at 406; In re Szekely, 936 F.2d 897, 899-900 (7th Cir. 1991)); In re Huff, 61 B.R. 678, 681 (Bankr. N.D. Ill.

1986). There is no dispute between creditors and the estate, and the finality rule should not be relaxed. But this is of no moment because Pontikes' non-party status in the bankruptcy proceeding, and his inability to appeal that order in the normal course, entitle him to appeal immediately. Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir. 1997). That the Trustee may have a right to appeal the bankruptcy court's discovery order should not limit Pontikes' right to appeal. If the order requiring production of the agreement was in error, any resulting prejudice to Pontikes after production of the agreement could not be remedied by reversal of that order. The terms of the agreement would be disclosed and, as discussed below, could be used in separate proceedings brought by the Trustee against the SIP participants and by the SIP participants against Pontikes and others. The district court's discretion to grant or deny leave to appeal has been described as "unfettered" (Nat'l Steel Corp. v. NUF LLC (In re Nat'l Steel Corp.), 2005 U.S. Dist. LEXIS 18862, *8 (N.D. Ill. 2005)), and we exercise that discretion to entertain Pontikes' appeal.

Whether production of the settlement agreement was proper depends in large part on how the adversary action that resulted in the agreement relates to the bankruptcy proceeding. The individual actions brought by the Trustee against the individual SIP participants may be seen as existing within or outside the scope of the bankruptcy proceeding. There is no bright line test to determine on which side those actions fall. Rather, the most sensible approach is the fact-sensitive one that focuses on who possesses primary control over the separate actions. The Trust Agreement allocates the responsibility over those actions to the Trustee, not the bankruptcy court, which is plainly demonstrated by the fact that the Trustee has the discretion to involve the bankruptcy court (*see* Trust Agreement sec. 4.1(b)). Confidentially settling the state court action against Pontikes without seeking authorization from the bankruptcy court

was squarely within the Trustee's enumerated powers.    Viewing the state court action as distinct from the bankruptcy action frames the analysis of the bankruptcy court's application of the bankruptcy procedures and rules.

In bankruptcy cases there is a presumption that all documents are public documents. In re Hemple, 295 B.R. 200, 201 (Bankr. D. Vt. 2003); In re Fibermark, Inc., 330 B.R. 480, 505 (Bankr. D. Vt. 2005). The presumption of public access to documents is established in 11 U.S.C. § 107(a), which provides that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." The policy for openness is not, however, absolute, as section 107(b) allows the bankruptcy court to require that certain information be made unavailable in order to protect an entity's trade secrets and other confidential information, or to protect a person from the dissemination of scandalous or defamatory matter contained in the documents.    These exceptions have been "narrowly construed," while the public's right to access has been "zealously upheld." In re Fibermark, 330 B.R. at 506.

Under the plain language of section 107(a), the presumption of disclosure attaches to documents filed in bankruptcy cases. The court in In re Hemple, 295 B.R. at 202, specifically noted that the Bankruptcy Code's disclosure mandate applies to "all documents in a bankruptcy case." See also In re Ionosphere Clubs, 158 B.R. 414, 433 (Bankr. S.D.N.Y. 1993) (no right of public access attaches to documents that are not filed with the bankruptcy court or become judicial documents in some other manner).

The settlement agreement between the Trustee and Pontikes was not filed in the bankruptcy case, but was instead entered in the separate civil action brought in the Illinois state court.    The presumption of public access therefore does not carry the same weight as a

document filed in a bankruptcy action, or any other matter. The parties debate the significance of Jessup v. Luther, 277 F.3d 926, 929-30 (7ᵗʰ Cir. 2002), in which the court concluded that a private settlement agreement was presumptively public when it was in the district court's files and reflected input of a federal judge. The court also observed that settlement agreements are ordinarily private documents, not judicial records, which obviates the need for balancing the parties' interests in secrecy against the public's interest in disclosure. *Id.* at 928. There is no indication of the filing status of the agreement in state court, or the state court's participation in any settlement negotiations. We assume, by virtue of the separate proceedings, that the settlement agreement has not been filed with the bankruptcy court, and that the bankruptcy judge played no role in settlement negotiations. The Trustee could have sought the bankruptcy court's authorization of the settlement with Pontikes, but it elected not to do so. Without more information regarding the filing status of the settlement agreement, or judicial participation in its creation and enforcement, it cannot be said that the settlement agreement is a judicial document subject to the presumption of public disclosure. *See* Herrnreiter v. Chi. Hous. Auth., 281 F.3d 634, 636-637 (7th Cir. 2002).

The Trustee is not required to file the terms of the settlement agreement with the bankruptcy court. *Compare* Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Gloval Corp.), 422 F.3d 1, 8 (1st Cir. 2005) (under 11 U.S.C. §§ 1106(a)(4)(A), (b) the examiner is required to file a statement of his examination, and the statement is therefore a document filed with the bankruptcy court under section 107). Appellees read into the Trust Agreement disclosure obligations that are simply not present. The Trustee was not required to seek the bankruptcy court's approval of the settlement. Thus, despite the "sweeping" coverage of section 107(a), the norm of public disclosure that attends bankruptcy proceedings does not attach to

a settlement agreement filed in a separate proceeding when that agreement cannot be treated as a judicial record. Appellees assert that even if the agreement is confidential and not a judicial record, the bankruptcy court could use its equitable powers to require disclosure. However, the bankruptcy court's equitable powers are confined by the Bankruptcy Code, which does not contain a "general equitable override." In re Payne, 431 F.3d 1055, 1063 (7th Cir. 2005) (Easterbrook, J., dissenting); Petro v. Mishler, 276 F.3d 375, 378 (7th Cir. 2002).

Further, the Trustee's state court action against Pontikes is separate from the actions brought against the other SIP participants, i.e., appellees. The bankruptcy court found White v. Warren & Son, LTD., 203 F.R.D. 364 (N.D. Ill. 2001), to be persuasive authority. In White, one defendant settled and the court ordered disclosure of a settlement agreement to the non-settling defendant because it was relevant to liability in light of overlapping claims. Reliance on White fails to distinguish that appellees and Pontikes are not co-defendants, even though the Trustee is a common plaintiff in the actions. The amount of Pontikes' settlement should not impact the value of the Trustee's claims against any other SIP participant. The Trustee is obligated to maximize the cash proceeds from each SIP claim, and in doing so it may consider each SIP participant's ability to pay. Allowing the SIP participants to see the value of the Pontikes' settlement would not allow them to "ascertain the extent of their liability" as the co-defendant in White could do after viewing the settlement agreement signed by his co-defendant. White, 203 F.R.D. at 367.

In addition to the importance of viewing the separate actions brought by the Trustee against the SIP participants as distinct from the bankruptcy proceeding, it is also essential to properly identify the parties to determine whether the application of Rule 2004 was proper. In the separate note collection and subrogation actions brought by the Trustee, appellees are

in the same positions as Pontikes–defendants in civil actions. Appellees do not claim to be beneficiaries to the trust. The beneficiaries have a definite interest in the Trustee's conduct and obligation to maximize the value of each SIP claim, and have a better claim to examine the Trustee's conduct for misdoing and collusion with SIP participants. As former SIP participants, appellees' and Pontikes' financial interests conflict with those of the trust beneficiaries. For the purposes of Trustee's action to collect Pontikes' SIP note, Pontikes is not the debtor in the bankruptcy proceeding, regardless of his former status as President and CEO of the debtor, Comdisco, although he personally was a debtor on a note. Neither is the Trustee the debtor. The Trustee was appointed post-confirmation to collect notes to which it obtained title from the Bank, not the debtor. The Trustee properly observes that appellees incorrectly refer to him as "Comdisco's Litigation Trustee," when in reality the Trustee does not answer to Comdisco, who transferred and assigned all of its interests to the Trustee (*see* Trust Agreement, sec. 1.2).

In light of the parties' roles and identities, we think the application of Rule 2004 was incorrect on two principle grounds. First, production of the settlement agreement would not lead to discovery of the debtor's assets. Further, the commencement of adversary proceedings made Rule 2004 inapplicable.

A Rule 2004 examination is "properly used as a pre-litigation device to determine whether there are grounds to bring an action to determine a debtor's right to discharge or the dischargeability of a particular debt." In re The Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996). Rule 2004 examinations focus on the debtor's financial affairs. *See* In re Symington, 209 B.R. 678, 684 (Bankr. D. Md. 1997) (Rule 2004 examination "represents a threshold inquiry into the assets and conduct of debtors bankruptcy."). Inquiry into the

debtor's estate is often made to discover wrongdoing and fraud. 2435 Plainfield Ave. v. Township of Scotch Plains (In re 2435 Plainfield Ave.), 223 B.R. 440, 456 (Bankr. D. N.J. 1998) ("A Rule 2004 exam has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the exposure of fraudulent conduct."); In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); In re Valley Forge Plaza Assocs., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990). The discovery of assets and examination of transactions also preserves creditors' rights. In re the Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991). To achieve these purposes, Rule 2004 examinations "are broad and unfettered and in the nature of fishing expeditions." In re Enron, 281 B.R. at 840. The scope of a Rule 2004 examination is much broader than that permitted by discovery under the Federal Rules of Civil Procedure (FRCP). In re Drexel Burnham Lambert Group, 123 B.R. at 711.

As noted above, after Comdisco Holding and the Bank settled the Bank's guaranty claim, the Bank assigned its interest and title in the SIP notes to the Trustee. Pontikes held his SIP notes as an individual SIP participant. By applying Rule 2004, the bankruptcy court must have considered the SIP claims to be the debtor's assets, or that one of the settling parties was the debtor. But there are no factual findings to support the conclusion that either Pontikes or the Trustee are debtors, or that the SIP notes held by Pontikes are the debtor's assets.

Rule 2004 is a pre-litigation discovery device for bankruptcy proceedings, and when an adversary proceeding or contested matter has commenced, discovery must be made pursuant to the Federal Rules. In re The Bennett Funding Group, Inc., 203 B.R. at 28; In re Valley Forge Plaza Assocs., 109 B.R. at 674; In re Enron Corp., 281 B.R. at 840; In re Szadkowski, 198 B.R. 140, 142 (Bankr. D. Md. 1996). Due to the discrepancy in the discovery standards, courts

are "wary of attempts to utilize [Rule 2004] to avoid the restrictions of [the FRCP] in the context of adversary proceedings." In re The Bennett Funding Group, Inc., 203 B.R. at 28; *see also* In re Valley Forge Plaza Assocs., 109 B.R. at 675; In re Enron Corp., 281 B.R. at 841 ("Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure.").

The cases are not conclusive as to whether the adversary proceeding or contested matter must be the bankruptcy proceeding itself, or whether another related proceeding is sufficient to trigger application of the FRCP. Courts have denied motions for Rule 2004 examinations in light of pending litigation in federal district courts. *See* In re Duratech Indus., Inc., 241 B.R. 291 (Bankr. E.D.N.Y. 1999); In re Enron Corp., 281 B.R. 836. Yet, other courts have permitted Rule 2004 discovery, even when the information could be used in other proceedings. *See* In re Mirant Corp., 326 B.R. 354, 357 (Bankr. N.D. Tex. 2005); In re Mittco, Inc., 44 B.R. 35 (Bankr. E.D. Wisc. 1984). Despite these conflicting positions, the Trustee's commencement of civil actions against the individual SIP participants are adversary proceedings and contested matters that warrant application of discovery under the FRCP, rather than Rule 2004. Similarly, appellees' separate action against Pontikes, which we recently remanded to the state court, renders Rule 2004 inapplicable. The information sought, and the reasons that appellees seek it, are substantially relevant to the pending litigation in state and federal courts, not the bankruptcy proceedings.

Appellees assert that the settlement agreement is relevant to their claims that Comdisco has and continues to violate its fiduciary duty by not treating the SIP participants on equal terms. This argument is highly relevant to Count I of the remanded complaint that alleges that

Comdisco's Board of Directors, which included Pontikes, breached its fiduciary duty, as well as other counts in the complaint that allege fraud and misrepresentation by the Board of Directors. As Comdisco's fiduciary duty is a subject of pending litigation, discovery should not have been allowed under Rule 2004. *See* <u>In re 2435 Plainfield Ave.</u>, 223 B.R. at 456. The settlement agreement can only be used to further appellees' cases in other venues, as both defendants and plaintiffs, and the production of that agreement under Rule 2004, was in error. *See* <u>Snyder v. Soc'y Bank</u>, 181 B.R. 40, 42 (S.D. Tex. 1994) (party's use of Rule 2004 to "further its case in state court constitutes an abuse of Rule 2004."). Here, the related litigation is pending, unlike the potential or expected litigation in <u>Matter of Sutera</u>, 141 B.R. 539, 541 (Bankr. D. Conn 1992) and <u>In re Mirant</u>. While there is pronounced relevance to the pending litigation, there is very little that concretely ties the settlement agreement to any aspect of the bankruptcy proceeding or any indication that the information sought would affect the administration of that proceeding. The production of the settlement agreement under Rule 2004 would circumvent the discovery rules that govern the pending litigation in state and federal court.

The bankruptcy court also concluded that production of the settlement agreement was required "to guard the overall integrity of the bankruptcy process." There is little doubt that the bankruptcy court possesses the discretion to safeguard the bankruptcy process, and we are convinced that this discretion is broad. The issue is whether ordering production of the confidential settlement agreement abused that discretion. The bankruptcy court noted that Pontikes was formerly Comdisco's CEO and allegedly the architect of the reorganization plan. It further observed that disclosure of the settlement agreement would "certainly prevent any unfair treatment of other people involved" (March 2, 2006, tr. at 26-27).

In bringing an action against Pontikes and settling that action confidentially, the Trustee was acting in accordance with the powers vested in him by the Trust Agreement. He is authorized to consider each participant's ability to pay, and obligated to maximize the value of each SIP claim. The bankruptcy court has a much better, ground-level impression of the character and credibility of the participants in this litigation. But there were no factual findings or witness testimony regarding the production of the settlement agreement or favorable treatment that Pontikes may have received due to his former status.

Appellees assert that the settlement agreement may be obtained through other means. That may be true, but our inquiry is limited to whether production pursuant to the reasons stated by the bankruptcy court was in error. We conclude that it was.

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is reversed.

JAMES B. MORAN
Senior Judge, U. S. District Court

Aug 14, 2006.